**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **ANDY MONTANEZ,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **No. 10 C 4708** |
| ) | |
| **CHICAGO POLICE OFFICERS** ) | **Magistrate Judge Finnegan** |
| **Fico (Star #6284), Simon (Star #16497),** ) | |
| **and THE CITY OF CHICAGO,** ) | |
| ) | |
| **Defendants.** ) | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Andy Montanez filed suit under 42 U.S.C. § 1983 alleging that Officer Vincent Fico used excessive force against him in connection with an arrest on March 20, 2009, and that Officer Joseph Simon failed to intervene to prevent the use of excessive force. Following a 3 1/2-day trial, on June 15, 2012, the jury found in favor of Plaintiff on his excessive force claim and awarded him a total of $2,000 ($1,000 in compensatory damages and $1,000 in punitive damages). The jury found in favor of Defendant Simon on the failure to intervene claim.

Plaintiff now seeks to recover $426,379.69 in attorneys' fees and $1,824.99 in expenses under 42 U.S.C. § 1988, and $4,696.84 in costs pursuant to Fed. R. Civ. P. 54(d)(1) and 28 U.S.C. § 1920. Plaintiff also seeks an award of prejudgment interest on the attorneys' fees. Defendants, in turn, seek $19,936.34 in costs on behalf of Officer Simon. For the reasons set forth here, Plaintiff is awarded $109,503.86 in fees and expenses, plus prejudgment interest, and $3,055.04 in costs. Defendants' request for costs is denied.

## DISCUSSION

In Section 1983 cases, a court has discretion to award "the prevailing party . . . a reasonable attorney's fee as part of the costs" pursuant to 42 U.S.C. § 1988. *Walker v. Calumet City, Illinois*, 565 F.3d 1031, 1033 (7th Cir. 2009). In addition, Federal Rule of Civil Procedure 54(d)(1) provides that "costs – other than attorney's fees – should be allowed to the prevailing party" unless "a court order provides otherwise." Defendants argue that Plaintiff's request for fees must be substantially reduced in this case because the attorney rates are too high, the hours expended are unreasonable, and Plaintiff achieved only limited success. Defendants also maintain that Plaintiff's cost award must be modified to exclude excessive deposition transcript charges and other improper expenses. Plaintiff defends his attorneys' hours and rates, and insists that his level of success was so unexpected as to warrant a 25% increase in his fee award. Plaintiff further argues that Defendants are not entitled to any costs in this case. The Court considers each argument below.

### A. Reasonable Attorneys' Fees

In determining a reasonable attorneys' fee amount, the Court uses the lodestar method, which entails "multiplying the 'number of hours reasonably expended on the litigation . . . by a reasonable hourly rate.'" *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 639 (7th Cir. 2011) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983)). The lodestar amount may then be adjusted based on factors set forth in *Hensley*, but "[t]here is a strong presumption that the lodestar calculation yields a reasonable attorneys' fee award." *Id.*

1.      **Lodestar Amount**

In his petition for fees, Plaintiff claims that his lodestar amount is $341,103.75. (Doc. 123, at 8).  According to the attached time records, however, the lodestar amount calculates to $341,985, a difference of $881.25.   Specifically, Plaintiff's attorneys, Brendan Shiller, April Preyar, Mary Grieb, Barbara Long, Laura Bautista, Jon Erickson and Michael Oppenheimer worked a total of 1,021.55 hours on the case, and paralegals "DM" (full name unknown) and Roberto Lopez ("RL") worked another 30 hours.  (Doc. 123-1; Doc. 123-5).  At the requested rates, the total fees break down as follows:

| Attorney | Hours | Rate | Total |
|---|---|---|---|
| Shiller (2009-2010) | 58 | $400 | $23,200 |
| Shiller (2011) | 61.75 | $425 | $26,243.75 |
| Shiller (2012 through trial) | 69.6 | $450 | $31,320.00 |
| Shiller (2012 post trial) | 22.2 | $450 | $9,990 |
|  | 211.55 |  | $90,753.75 |
|  |  |  |  |
| Preyar (2009-2010) | 8.75 | $400 | $3,500 |
| Preyar (2011) | 11.75 | $425 | $4,993.75 |
| Preyar (2012) | 169.5 | $450 | $76,275 |
|  | 190 |  | $84,768.75 |
|  |  |  |  |
| Grieb (2010) | 52.25 | $225 | $11,756.25 |
| Grieb (2011) | 192.75 | $250 | $48,187.50 |
| Grieb (2012 through trial) | 230.25 | $275 | $63,318.75 |
| Grieb (2012 post trial) | 56.75 | $275 | $15,606.25 |
|  | 532 |  | $138,868.75 |
|  |  |  |  |
| Long (2010) | 70.5 | $275 | $19,387.50 |
| Long (2011) | 8.75 | $300 | $2,625 |
| Long (2012) | 0.25 | $300 | $75.00 |
|  | 79.5 |  | $22,087.50 |
|  |  |  |  |
| Bautista (2009) | 3.25 | $275 | $893.75 |
|  |  |  |  |
| Erickson (2009-2010) | 1.5 | $450 | $675 |
|  |  |  |  |
| Oppenheimer (2009-2010) | 3.75 | $450 | $1,687.50 |

| | | | |
|---|---|---|---|
| **Total Attorney Time:** | **1,021.55** | | **$339,735** |
| Paralegal | | | |
| DM | 8.5 | $75 | $637.50 |
| RL | <u>21.5</u> | $75 | <u>$1,612.50</u> |
| **Total Paralegal Time:** | **30** | | **$2,250** |
| **Totals:** | **1,051.55** | | **$341,985** |

Defendants believe the lodestar amount is much lower because Plaintiff's attorneys are seeking excessive hourly rates and have expended an excessive number of hours in what they characterize as a simple Section 1983 case. According to Defendants, once the rates and hours are properly reduced, the lodestar totals only $93,999.75. (Doc. 144, at 11). The Court considers these objections below to determine an appropriate lodestar in this case. Since the Court cannot discern what accounts for the $881.25 difference in Plaintiff's stated lodestar calculation and the calculation reflected in the billing records, the resulting lodestar amount will then be reduced by an additional $881.25.

      a.   **Hourly Rate**

Defendants argue that Mr. Shiller, Ms. Preyar, Ms. Grieb and Ms. Long are all seeking excessive hourly rates for their time in this case. An attorneys' reasonable hourly rate is "derived from the market rate for the services rendered." *Pickett*, 664 F.3d at 640 (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). The court presumes that an attorney's "actual billing rate for similar litigation is appropriate to use as the market rate." *Id.* The "next best evidence" of a reasonable market rate is "evidence of rates similarly experienced attorneys in the community charge paying

clients for similar work and evidence of fee awards the attorney has received in similar cases." *Id.* (quoting *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 555 (7th Cir. 1999)). The party seeking fees bears the burden of "produc[ing] satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community." *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 n.11 (1984)). Once the fee applicant satisfies this burden, the other party must provide "a good reason why a lower rate is essential." *Id.* (quoting *People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1313 (7th Cir. 1996)).

### i. Brendan Shiller

Mr. Shiller is claiming an hourly rate of $400 for work done in 2009 and 2010, with $25 annual increases in 2011 (to $425) and 2012 (to $450). Plaintiff justifies these rates by noting that Mr. Shiller has practiced law for 9 years; he has been the lead attorney or second chair for "21 jury trials, including six section 1983 jury trials in the Northern District of Illinois, including victories in three cases"; he has conducted more than 200 bench trials or motion hearings; he has "at least one Section 1983 client that has paid an upfront retainer, agreeing to pay $450 an hour for initial services on [the] case"; and he is currently being paid $500 an hour to negotiate an employment contract. (Doc. 123, at 18; Doc. 123-8, at 46).

Relying on similar evidence, the court in *Richardson v. City of Chicago*, No. 08 C 4824, 2012 WL 6185867 (N.D. Ill. Nov. 20, 2012), recently recommended that Mr. Shiller receive an hourly rate of $400. *Id.* at *12. Plaintiff urges this Court to adjust that rate upward to account for the fact that in *Richardson*, Mr. Shiller only requested $400 per hour because he "was the third chair at trial in a case led by two very senior

attorneys" – Torreya Hamilton and D'Anthony Thedford. (Doc. 157 ¶ 4). Here, of course, Mr. Shiller did none of the trial work at all, so it is not clear why he should receive an even higher rate. In addition, the *Richardson* court based its fee recommendation in part on Mr. Shiller's representation that the City had agreed in December 2010 to "a fee total that incorporated an hourly rate of $400 an hour for Mr. Shiller." 2012 WL 6185867, at *12 (citing *Rodriguez v. City of Chicago*, No. 09 C 1913). In fact, it appears that the parties in *Rodriguez* merely agreed on a total monetary amount without considering specific hourly rates. (Doc. 161, at 2; Doc. 161-1). The settlement is thus not compelling evidence of Mr. Shiller's reasonable hourly rate.[1]

Plaintiff has augmented his submissions in this case with an affidavit from Anthony Burch of Burch and Associates, who "has been practicing federal civil rights law since 2010." (Doc. 123-12, Burch Aff., ¶¶ 1, 3). Mr. Burch attests that he has known Mr. Shiller since 2009, and that his requested hourly rates are reasonable given that Mr. Shiller is "among the best trial lawyers that [Mr. Burch] has witnessed."[2] (*Id.* ¶¶ 4, 6, 8). Though Mr. Burch has first-hand knowledge of Mr. Shiller's skills, he fails to identify any civil rights cases that he has personally handled, or indicate what rate he received for them. Nor does he provide the specific rates awarded to other civil rights attorneys within the relevant community. *See Pickett*, 664 F.3d at 647 (criticizing third party affidavits that "merely opine on [the attorney's] market rate" without providing "evidence as to what the comparable attorneys charge for similar services."). This is

---

[1]     It is also worth noting that the *Richardson* court recommended that attorney Hamilton receive a rate of $425 per hour without mentioning that four months earlier, in *Gibson v. City of Chicago,* 873 F. Supp. 2d 975, 985 (N.D. Ill. 2012), Hamilton was awarded a rate of only $395 per hour. 2012 WL 6185867, at *11.
[2]     Mr. Burch makes a similar claim as to Ms. Preyar, whom he has known since 2007. (Doc. 123-12, Burch Aff., ¶¶ 5, 6).

likely because Mr. Burch's law firm concentrates in criminal defense, personal injury, and family law as opposed to Section 1983 cases, and he thus refers "all possible police misconduct cases to Shiller Preyar." (*Id.* ¶¶ 1, 7). On these facts, Mr. Burch's conclusory assertion regarding the reasonableness of Mr. Shiller's stated hourly rate is not instructive.

Plaintiff next attempts to justify paying Mr. Shiller $450 per hour by pointing to the Laffey Matrix, which is "a chart of hourly rates for attorneys and paralegals in the Washington, D.C. area that was prepared by the United States Attorney's Office for the District of Columbia to be used in fee-shifting cases." *Pickett*, 664 F.3d at 649. According to the Laffey Matrix, the market rate for attorneys who have been practicing as long as Mr. Shiller is more than $500 per hour. (*See* http://www.laffeymatrix.com/see.html, last viewed on March 7, 2013). As the *Pickett* court noted, however, district courts in this Circuit have reached "divergent opinions" regarding the usefulness of the Laffey Matrix. 664 F.3d at 650 (citing cases). This Court, moreover, recently concluded that "the Laffey Matrix's use of years of practice as a proxy for experience and skill (and thus the market rate that is commanded by an attorney) becomes increasingly crude – and decreasingly helpful – in the 8 to 10 year, 11 to 19 year, and 20-plus year brackets." *Sughayyer v. City of Chicago*, No. 09 C 4350, 2012 WL 2359065, at *9 (N.D. Ill. June 20, 2012) (quoting *Ragland v. Ortiz*, No. 08 C 6157, Slip op., at 8 (N.D. Ill. Feb. 17, 2012)).

Here, though Mr. Shiller is only in his ninth year of practice, the Laffey Matrix reflects that he should be paid more than the rate received by the most highly experienced Section 1983 attorneys in this jurisdiction. In that regard, Jon Loevy, who

has practiced law for 19 years and "leads what is fairly considered one of the premier Chicago-area law firms concentrating in plaintiffs section 1983 litigation," was recently awarded a rate of only $495 per hour. *Jimenez v. City of Chicago*, No. 09 C 8081, 2012 WL 5512266, at *2 (N.D. Ill. Nov. 14, 2012). On these facts, the Laffey Matrix is not a fair indicator of Mr. Shiller's reasonable hourly rate. *See Elusta v. City of Chicago*, 760 F. Supp. 2d 792, 798 (N.D. Ill. 2010) (noting that the Laffey Matrix "has not been formally adopted in the Seventh Circuit, and its rates appear significantly higher than those typically awarded in this district.").

As Defendants note, just a few years ago, Mr. Shiller claimed and received an hourly rate of $225. *Edwards v. Rogowski*, No. 06 C 3110, 2009 WL 742871, at *5 (N.D. Ill. Mar. 18, 2009). Plaintiff insists that this was "a compromise rate that was ultimately agreed to by both sides" in a case where Mr. Shiller served as "fourth-chair." (Doc. 149, at 11). The opinion, however, reflects only that the defendants did not challenge Mr. Shiller's "claimed hourly rate," 2009 WL 742871, at *5, and the billing records he submitted set his rate at $225 per hour. (Doc. 151-1). Mr. Shiller may now regret requesting such a low rate, but it is certainly relevant in assessing the reasonableness of his current petition.

Recognizing that some three or four years have passed since the *Edwards* decision, Defendants propose that Mr. Shiller now receive $235 per hour. (Doc. 144, at 6, 7). They derive this number from *Sughayyer*, a case where this Court was tasked with setting an appropriate hourly rate for attorneys Mark Parts and Joseph Lopez, both of whom had more than 20 years of experience. Another district court had awarded them each an hourly rate of $375 for work they performed in 2008, and this Court

determined that they should receive $385 per hour for their work in 2011. 2012 WL 2359065, at *9, 11. The Court explained that even according to the Laffey Matrix, "billing rates largely stagnated between 2008 and 2010." *Id*. at *9 n.7. Mr. Shiller has not been in practice nearly as long as the attorneys in *Sughayyer*, so the experience he has gained over the past three or four years is arguably more significant in his overall career. At the time of the *Edwards* decision, for example, Mr. Shiller had only tried one civil rights case, whereas now he has tried six. In the Court's view, $235 does not fairly reflect this increase in Mr. Shiller's experience.

The Court also declines to adopt Plaintiff's position that since Mr. Shiller "has been paid as much $450 an hour," this constitutes conclusive evidence of his appropriate rate. (Doc. 123, at 18; Doc. 123-8; Doc. 149, at 7-8). Most of the cases Plaintiff points to involved criminal defense and contract negotiation, not civil rights work. There is one case involving Section 1983 work, but the client there signed a contingency agreement. (Doc. 123, at 21; Doc. 123-8, at 46).[3] The Seventh Circuit has recognized "the difficulty of determining the hourly rate of an attorney who uses contingent fee agreements," and has thus advised district courts to rely instead on the "next best evidence" of an attorney's market rate, i.e., the rates charged by similarly experienced attorneys in the community for similar work. *Pickett*, 664 F.3d at 640.

As noted, Jon Loevy now commands $495 per hour for his work in Section 1983 cases, *Jimenez*, 2012 WL 5512266, at *2, but as recently as December 2011, he submitted an affidavit to this Court affirming that he was receiving just $425 per hour.

---

[3]     Under this retainer agreement, the client agreed to pay a non-refundable sum of $1,000 toward legal fees (said to represent 3 hours of work). The client was not required to pay any additional monies toward legal fees, regardless of how many hours the attorneys worked, absent recovery at trial or from a settlement.

*Sughayyer*, 2012 WL 2359065, at *9. Plaintiff claims that Mr. Shiller and his colleagues have been very successful, losing only 5 of their 133 Section 1983 jury trials (the firm also lost 8 cases on summary judgment motions or motions to dismiss, won 5 trials, and settled 63 cases). (Doc. 123, at 22-23). This level of success is not comparable to that of Mr. Loevy, nor does Mr. Shiller (or his co-counsel) have the same reputation or level of recognition within the legal community. *Compare Wells v. City of Chicago*, __ F. Supp. 2d __, 2013 WL 622942, at *4 (N.D. Ill. Feb. 20, 2013) (describing Jon Loevy as "an attorney whose experience, skill, and record of success in representing plaintiffs in police misconduct cases place him at the apex of attorneys who practice in that field."); *Blackwell v. Kalinowski*, No. 08 C 7257, 2012 WL 469962, at *3 (N.D. Ill. Feb. 13, 2012) (describing Mr. Loevy's education, noting that he has been recognized by a number of legal publications, and discussing his significant trial successes including 12 separate jury verdicts of $1 million or more); *Duran v. Town of Cicero*, No. 01 C 6858, 2012 WL 1279903, at *20 n.14 (N.D. Ill. Apr. 16, 2012) (noting that Mr. Loevy's "success continues to the present day; he recently obtained a $25 million jury verdict in a § 1983 wrongful-conviction case."). Yet Plaintiff claims that Mr. Shiller commands a rate that is only $45 lower than Mr. Loevy's current rate, and $25 *higher* than the maximum rate Mr. Loevy received well into 2012. *See, e.g., Sandra T.E. v. Sperlik*, No. 05 C 473, 2012 WL 1107845, at *2 (N.D. Ill. Apr. 1, 2012) ("Recently, Loevy has reported fees at an hourly rate of $395–$425."). There is no support for such a finding.

Rather, this Court finds Mr. Shiller's experience more comparable to that of Mr. Parts. As set forth in *Sughayyer*, Mr. Parts was entitled to an hourly rate of $385 where he had only 10 years of civil rights experience and had conducted three Section 1983

trials.  2012 WL 2359065, at *9-11.  Based on Mr. Shiller's level of experience, the $225

hourly rate he received in *Edwards*, and the rates awarded to comparable attorneys in

Section 1983 cases, the Court finds a rate of $385 per hour reasonable for Mr. Shiller's

legal work in this case.

### ii.    April Preyar

Like Mr. Shiller, Ms. Preyar is claiming an hourly rate of $400 for work done in

2009 and 2010, with $25 annual increases in 2011 (to $425) and 2012 (to $450).  Ms.

Preyar has been practicing law for 13 years, including 6 years as an Assistant Public

Defender in Cook County, and 7 years in private practice.  In the past 18 months or so,

she has conducted 7 federal civil rights jury trials and 4 criminal jury trials.  All told, she

estimates she has had over one hundred jury trials.  (Doc. 123, at 17).  In addition, Ms.

Preyar has been paid as much as $450 an hour by some clients in criminal cases.  (*Id.*

at 18; Doc. 123-8).  According to sole practitioner D'Anthony Thedford, Ms. Preyar is a

"competent and skilled litigator" and her requested hourly rates are reasonable.  (Doc.

123-7, Thedford Aff., ¶¶ 10, 11).

Viewing the evidence as a whole, the Court agrees with Plaintiff that Ms. Preyar's

experience is comparable to that of Mr. Shiller.  Thus, she reasonably commands the

same $385 hourly rate.

### iii.    Mary Grieb

Ms. Grieb graduated from law school in 2010 and has only been practicing for

about 2 years, but Plaintiff claims that she should receive $250 per hour for work done

in 2011 and $275 per hour for work done in 2012.  (Doc. 123, at 19).  Plaintiff notes that

Ms. Grieb has "litigated several cases to the point of trial or settlement as the lead

attorney"; "participated in numerous motion hearings in this district, motion to suppress hearings in criminal court, and a criminal jury trial"; and "played a significant role at trial in this case." (*Id.*). Plaintiff has also submitted affidavits from Jon Erickson and Michael Oppenheimer, former colleagues from the Civil Rights Center ("CRC"), who both attest that the rates sought by Ms. Grieb are reasonable. (Doc. 123-13 ¶¶ 6, 7; Doc. 123-14 ¶¶ 6, 7). Finally, Plaintiff maintains that the requested rates are consistent with the Laffey Matrix, and suggests that the City has already agreed to pay Ms. Grieb $250 per hour by settling several fee petitions where that was her proposed rate, including *Williams v. City of Chicago* and *Khaled v. City of Chicago.* (Doc. 123, at 19).

The affidavits of Mr. Erickson and Mr. Oppenheimer are not persuasive as to an appropriate hourly rate for Ms. Grieb, as neither attorney has identified specific rates awarded to other civil rights attorneys of comparable experience within the relevant community. *See Pickett*, 664 F.3d at 647. Nor is the Laffey Matrix instructive, as its rates are "significantly higher than those typically awarded in this district." *Elusta*, 760 F. Supp. 2d at 798. As for the settlements, there is no evidence that the City of Chicago agreed to Ms. Grieb's rate, as opposed to agreeing generally to an overall fee amount.[4]

Defendants insist that Ms. Grieb should only receive $120 per hour given her status as "a novice attorney and a novice civil rights litigator" who began working on this case only five days after she was licensed to practice law. (Doc. 144, at 9). They direct the Court to *Pasternak v. Radek*, No. 07 C 2858, 2008 WL 2788547 (N.D. Ill. Apr. 24, 2008), an ERISA case where the district court awarded a junior associate $150 per hour

---

[4]     Plaintiff also claims that "there are several police misconduct clients that have agreed to pay Grieb's rate of $300 an hour." (Doc. 149, at 10). As discussed with respect to Mr. Shiller, however, such contingency agreements are not persuasive evidence of what clients are willing to pay.

where the law firm provided "nothing in support of its claimed hourly rates other than an article from a legal newspaper and a[] [conclusory] affidavit from a local attorney." *Id.* at *2, 6. Though this is not an ERISA case, Plaintiff has not provided much more information to support Ms. Grieb's stated rates. Regardless, the Court finds *Pandolfi v. City of Chicago*, No. 12 C 2328, 2012 WL 3835103 (N.D. Ill. Sept. 4, 2012), more instructive. The *Pandolfi* court awarded a rate of $175 per hour to an associate who had been a licensed attorney since 2001 and had tried over 100 bench trials and 10 jury trials as an Assistant State's Attorney in Cook County, but who had only handled four Section 1983 cases since going into private practice in 2009. (*See also* Doc. 144-2, Ex. G, ¶¶ 1, 5). In addition, the court in *Sandra T.E.* recently awarded an associate with 5 years of experience an hourly rate of $225. 2012 WL 1107845, at *2.

Based on Ms. Grieb's level of experience, including a single Section 1983 trial, the Court finds that she should be paid an hourly rate of $175.

### iv.    Barbara Long

Defendants finally object to Ms. Long's hourly rate of $275 for work done in 2010, and $300 for work done in 2011 and 2012. Ms. Long is in her fifth year of practice and focused exclusively on civil rights litigation from 2009 to June 2012. (Doc. 123, at 20). In the past 18 months or so, she has conducted 5 civil rights jury trials, one state criminal trial, and several bench trials. (*Id.*). As with Ms. Grieb, Plaintiff supports Ms. Long's stated rates with affidavits from Mr. Erickson and Mr. Oppenheimer, and a claim that the agreed fee petition in *Williams v. City of Chicago* incorporated her rate of $300 per hour. (*Id.*; Doc. 123-13 ¶¶ 5, 7; Doc. 123-14 ¶¶ 5, 7). Ms. Long performed the bulk of her work on this case in 2011, at which time she was in her second or third year of

13

civil rights practice. The Court thus finds that she is reasonably entitled to the same $175 hourly rate as Ms. Grieb.

### v.      Laura Bautista

Laura Bautista was an associate at CRC who spent a total of 3.25 hours on this case in October and November 2009. (Doc. 123-5, at 4). Plaintiff seeks an hourly rate of $275 for Ms. Bautista, but has provided absolutely no support for this amount – not even the number of years she has been in practice or the nature of her experience. (Doc. 123, at 20) (stating only that Ms. Bautista's hours were "reasonabl[y] expended and the proposed rate[] should be granted."). For their part, Defendants assume that where the billing records refer to "LB," it was a typographical error and should have been "BL" for Ms. Long. (Doc. 144, at 10 n.5). In the absence of any information about Ms. Bautista or her experience, and given the small number of hours she spent on the case, the Court will simply disallow her time.

### vi.      Other Counsel

As explained below, the Court is not allowing Plaintiff to recover for any of the time spent on this case by Mr. Erickson and Mr. Oppenheimer. There is thus no need to address their stated hourly rates of $450 each.

### b.      Number of Hours

The Court next considers the number of hours Plaintiff's counsel spent litigating this case. "Counsel for the prevailing party should make a good faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. *See also Johnson v. GDF, Inc.*, 668 F.3d 927, 931 (7th Cir. 2012). In addition, "the court may reduce the award where the description of the work

14

performed is inadequate." *Thompson v. City of Chicago*, No. 07 C 1130, 2011 WL 2837589, at *7 (N.D. Ill. Feb. 14, 2011). Defendants raise several objections to the number of hours expended in this case, which the Court considers below.

As a preliminary matter, the Court notes that aside from a few examples described in the memorandum, most of Defendants' objections are set forth on a line-by-line basis in Exhibit K. (Doc. 144-3). Plaintiff argues that Defendants have waived any objection that was not expressly addressed in the memorandum, claiming that the line item approach "has basically made it impossible to respond to their objections." (Doc. 149, at 6). The Court disagrees. As discussed below, many of Defendants' objections are well-taken, and Plaintiff will not be rewarded for any improper billing in this case. *See, e.g., Chao v. Current Dev. Corp.*, No. 03 C 1792, 2009 WL 393862, at *8 (N.D. Ill. Feb. 13, 2009) (reviewing and sustaining in part objections made on a line-by-line basis); *Sottoriva v. Claps*, 617 F.3d 971, 974-75 (7th Cir. 2010) (court of appeals "reviews an award of attorney's fees under § 1988 for an abuse of discretion.").

### i.    Number of Attorneys

Defendants first argue that "Plaintiff's counsel requests unnecessary and excessive fees by employing two partners and one associate (and sometimes more than that) for what was a fairly simple and direct case." (Doc. 144, at 4). Plaintiff denies that he "overstaff[ed]" the case, and blames a lot of his attorneys' time on Defendants' "tactics of delay and insistence on taking unnecessary depositions," as well as their "failure to entertain any settlement discussions." (Doc. 123, at 11).

The Court agrees with Defendants that this case was not so complicated or large as to justify having more than one partner. As a result, Plaintiff may not recover for any

of the time Mr. Oppenheimer and Mr. Erickson spent assisting Mr. Shiller with Plaintiff's initial interview, and then subsequently reviewing the case with him.[5]  It was also excessive for both Mr. Shiller and Ms. Preyar to perform the same tasks on many occasions.  Plaintiff claims that "other than for a single 10-day period, at no time were both Preyar and Shiller working on the case at the same time."  (Doc. 123, at 9 (citing Doc. 123-5)).  In fact, there are multiple billing entries showing that both partners performed the same tasks throughout the course of the lawsuit.[6]

Mr. Shiller and Ms. Preyar hold themselves out as being of comparable skill, seeking the same hourly rate for their work.  There is no automatic prohibition against having two partners working on a case, but here it was not a justified expense given the low economic value of the lawsuit, the small number of parties and witnesses, and the fact that the case did not present substantial legal or factual complexity, or any novel questions.  According to Plaintiff, Mr. Shiller was the partner on this case through 2011,

---

[5]     The only other hours attributable to Mr. Oppenheimer and Mr. Erickson are those they spent reviewing the file to determine "which firm would take [the] case in light of CRC['s] breakup" in early 2010.  (Doc. 123-1, at 1).  Defendants should not have to pay for such internal firm management issues.  For that reason, the Court will also deduct the .5 hours Mr. Shiller spent deciding that he would keep the case.

[6]     For example, both discussed a statute of limitations issue with Ms. Long in March 2010; both were involved in case update and strategy meetings in June and August 2010, in February, March, April, May, July, August, October and December 2011, and in January 2012; both reviewed pacer emails and minute orders in July, August and November 2010, in May, July, October and December 2011, and in February, May and June 2012 (billing 15 minutes each time due to quarter-hour billing); both read the answer to the complaint and the motion to dismiss in September 2010; both met with Ms. Long in October 2010 to discuss whether Plaintiff's intentional infliction claim could be saved; both reviewed supplemental discovery and verified interrogatory answers in January 2011; both discussed the Heck issue in May 2011; both discussed a second demand letter in September 2011; both participated in trial strategy, trial preparation and related meetings from February through June 2012; both reviewed a memo from Ms. Grieb in March 2012; both reviewed and edited Plaintiff's motions in limine and the final pretrial order in May 2012; both prepared for and attended the final pretrial conference in June 2012; and both prepared for and attended the trial in June 2012 (Mr. Shiller spent 2.5 hours "observing" the trial on June 11, 2012).  (Doc. 123-1).

at which time Ms. Preyar took over. (Doc. 123, at 10). Thus, the 15.5 hours Ms. Preyar spent doing the same tasks as Mr. Shiller from 2009 through 2011 are disallowed, as are the 33.25 hours Mr. Shiller spent doing the same tasks as Ms. Preyar in 2012.[7] However, since it appears that Mr. Shiller did most of the work on the motions in limine in May 2012, the Court will allow his time and deduct 6.5 of the hours Ms. Preyar spent reviewing both those motions and the final pretrial order.

Finally, Plaintiff may not recover for the 9 hours Ms. Long spent on this case in 2011 and 2012, after it was transferred to Ms. Grieb. Nor will recovery be permitted for time spent deciding *whether* to transfer the case to Ms. Grieb, as discussed *infra*.

### ii. Time Spent on Non-Legal Tasks

Defendants also object to paying Plaintiff's attorneys for tasks that could have been performed by a paralegal or secretary. By way of example, Defendants note that Ms. Grieb spent some 5.5 hours filing 21 separate motions in limine in May 2012, at a cost of $1,512.50. (Doc. 144, at 4). Plaintiff responds that his attorneys routinely file such motions separately since "some of the judges in this district have standing orders requiring that motions be filed separately." (Doc. 149, at 5). The problem is not the separate filings, however, but the decision to bill for those filings at an attorney's rate.

"Courts have found organizing file folders, preparing documents, copying documents, assembling filings, electronically filing documents, sending materials, docketing or 'logging' case events into an internal case tracking system, and telephoning court reporters to be clerical." *Delgado v. Village of Rosemont*, No. 03 C 7050, 2006 WL 3147695, at *2 (N.D. Ill. Oct. 31, 2006). Ms. Grieb spent approximately

---

[7]    The Court has not deducted time where the second partner performed discrete tasks not duplicated by the lead partner.

21.75 hours on clerical tasks, including filing the final pretrial order and 23 motions in limine; ordering and docketing transcripts; getting updated client contact information; faxing documents and letters; arranging to get on Plaintiff's prison call list; filing an appearance; hand-delivering documents to opposing counsel; filing motions and notices; and filing a change of address. (Doc. 123-1, at 1-5, 7-10, 15-17, 21, 23-25). Similarly, Mr. Shiller spent 2.5 hours opening the case file, creating computer and paper files, scanning documents, and receiving deposition transcript invoices via email. (*Id.* at 1, 16, 17). Ms. Long spent an additional 1.75 hours updating client contact information, faxing letters and documents, and filing a report. (*Id.* at 2-3). All of these tasks "are easily delegable to non-professional assistance," *Spegon*, 175 F.3d at 553, and since Plaintiff's counsel did not properly bill for this time, it is disallowed.[8]

### iii.    Mock Trial

Defendants next maintain that they should not have to pay $11,262.50 for the time counsel and their paralegals spent conducting a full-day mock trial (8.5 hours each for Mr. Shiller, Ms. Preyar, Ms. Grieb, RL and DM). (Doc. 144, at 4). Plaintiff defends this expense as being "vital to the ultimate trial strategy in this case" because it enabled his attorneys to "see how certain strategies would play." (Doc. 149, at 4). A court in this district recently found that mock trial expenses are not proper in a straightforward Section 1983 case. *O'Sullivan v. City of Chicago*, 484 F. Supp. 2d 829, 837 (N.D. Ill. 2007) ("The claims in this case were not so complex – indeed they were not complex at all – that an expenditure of over $14,000.00 in fees (for Ms. Shoenberger alone) for a mock trial can be deemed compensable."). Plaintiff has not pointed to any case in this

---

[8]    Not only were these activities billed at an attorney's rate, but the time was recorded in quarter-hour increments. This presumably explains in part why the billing records indicate that Ms. Grieb spent a whopping 6.5 hours to "file" 23 motions in limine plus a final pretrial order.

district that has allowed a prevailing party to recover mock trial expenses. Instead, he notes that the Seventh Circuit has allowed expenses incurred for complicated mock oral arguments. *See, e.g., Ragsdale v. Lumpkin*, 94 F.3d 647 (Table), at *6 (7th Cir. 1996) (case challenging the constitutionality of three Illinois statutes); *Charles v. Daley*, 846 F.2d 1057, 1076-77 (7th Cir. 1988) (case seeking to declare Illinois Abortion Act of 1975 unconstitutional). In this Court's view, the issues presented in this case were not sufficiently complex to justify a mock trial, and Plaintiff may not recover for any of that time.

### iv. Other Objections

Defendants have identified several additional billing entries that the Court agrees are vague, unnecessary, or simply improper. Among the most disturbing is Plaintiff's request for $1,462.50 in fees to compensate Ms. Preyar for the 3.25 hours that she spent shopping for clothes for witness Efrain Nunez. (*Id.* at 23). Plaintiff also cannot recover for:

(1)    time spent researching the Prison Litigation Reform Act, which has nothing to do with this case (2.25 hours by Mr. Shiller, 4.25 hours by Ms. Long) (Doc. 123-1, at 1);

(2)    unspecified "call[s] to client" (3.5 hours by Ms. Long, 4.75 hours by Ms. Grieb) (*Id.* at 1-3, 4-6, 15, 16, 19);

(3)    time spent "trying to find client" (1.25 hours by Ms. Long, .5 hours by Ms. Grieb) (*Id.* at 2, 3, 6);

(4)    meetings to decide whether to transfer the case from Ms. Long to Ms. Grieb (.5 hours by Mr. Shiller, .5 hours by Ms. Preyar) (*Id.* at 3);

(5)     unspecified conversations with Plaintiff's family (.25 hours by Ms. Long, 2 hours by Ms. Grieb) (*Id.* at 2, 3, 7, 8);

(6)     time spent deciding whether to file a Freedom of Information Act suit (.75 hours by Mr. Shiller, .75 hours by Ms. Preyar, .75 hours by Ms. Grieb) (*Id.* at 4); and

(7)     time spent drafting 107 requests to admit after the close of discovery and without leave of court in November 2011, and conducting related work (e.g., drafting motion to deem facts admitted, responding to Defendants' motion to strike, etc.) (15.75 hours by Ms. Grieb).[9]

(*Id.* at 13-14).

### v.     Summary

To summarize, the Court will reduce Mr. Shiller's time by 48.25 hours, Ms. Preyar's time by 35 hours, Ms. Grieb's time by 54 hours, and Ms. Long's time by 20 hours.   Plaintiff cannot recover for any of the time spent by Mr. Oppenheimer, Mr. Erickson, Ms. Bautista, or DM, and can only recover 13 hours for RL.

### c.     Total Lodestar Amount

Based on the foregoing analysis, the lodestar amount in this case is $217,110.50.   The lodestar consists of the following hours and rates for Plaintiff's attorneys and paralegals:

---

[9]     Only a very small number of the requests to admit were deemed proper (i.e., ones seeking an admission that copies of police reports and other documents were authentic and that certain affirmative defenses were inapplicable).   It appeared during the hearing on Defendants' motion for a protective order that the parties would be able to reach a stipulation as to these so the Court required them to confer further.   In the event they were unable to reach stipulations that satisfied Plaintiff, the Court said Plaintiff could serve new requests.   Plaintiff never raised this issue with the Court again.   Hence, this Court declines to award fees based on Plaintiff's assertion in the fee petition that Defendants ignored repeated attempts to reach a stipulation as to these requests.   (Doc. 123, at 6).   If Plaintiff let the issue drop, the stipulations could not have been necessary or important to the case.

| | | | |
|---|---|---|---|
| Mr. Shiller | 163.3 hours | $385 per hour | $62,870.50 |
| Ms. Preyar | 155 hours | $385 per hour | $59,675 |
| Ms. Grieb | 478 hours | $175 per hour | $83,650 |
| Ms. Long | 59.5 hours | $175 per hour | $10,412.50 |
| RL | 13 hours | $75 per hour | $975 |
| Total: | | | $217,583 |

As noted earlier, this amount must be reduced by $881.25 to account for the difference between Plaintiff's calculation of his attorneys' hours and fees, and this Court's calculation based on the billing records. Thus, the final lodestar amount is $216,701.75.

## 2.    Adjustment to the Lodestar Amount

The Court's inquiry is not yet over because the lodestar amount may be adjusted up or down based on the 12 *Hensley* factors. 461 U.S. at 436.[10]  The Supreme Court has stated that "the most critical factor" is "the degree of success obtained" by the prevailing party. *Linda T. ex rel. William A. v. Rice Lake Area Sch. Dist.*, 417 F.3d 704, 708 (7th Cir. 2005) (quoting *Hensley*, 461 U.S. at 436). Plaintiff claims that his degree of success was so "exceptional" that he is entitled to a 25% upward adjustment of the lodestar amount. (Doc. 123, at 24). Defendants, on the other hand, argue for a 75% downward adjustment.

Plaintiff seeks to justify an upward adjustment to the lodestar essentially because the case was so undesirable and difficult to win. Defense counsel observe that "most

---

[10]    The twelve factors are: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases." 461 U.S. at 430 n.3.

Plaintiffs firms would have never brought, and if they had filed, would have likely voluntarily dismissed [this case] somewhere along the way." (Doc. 123, at 1). By way of background, Plaintiff, a convicted felon, was arrested by Officers Fico and Simon for drinking on the public way. He pled guilty to an aggravated battery for kicking Officer Fico (with both feet and to the groin) as the officer was removing him from the squad car at the police station. Plaintiff later sued Officer Fico for excessive force, testifying at his deposition (inconsistently with the factual basis for the plea) that he kicked the officer only after being punched in the face. Plaintiff also denied that he was drunk when this occurred but hospital records indicated he was legally intoxicated. Plaintiff acknowledges that this case had a "very small likelihood of success" – so much so that counsel placed it on the "back burner" for a period of time. (Doc. 123, at 2, 25). The billing records reflect that at one point, counsel questioned the "efficacy of the case." (Doc. 123-1, at 6).

Another reason the case was undesirable, Plaintiff observes, was the "lack of hard damages of any kind." (Doc. 123, at 29). Plaintiff suffered only "ephemeral injuries" in the form of bruises, scrapes and scratches on his face. (*Id.*). Indeed, Plaintiff notes that early in the case he offered to settle for $15,000 and made clear that this amount was "negotiable." At trial Plaintiff says he informed the jury that $1.00 in damages was acceptable as long as a message was sent. (*Id.*).

Given this low demand to the jury and how undesirable and difficult the case was, Plaintiff argues that despite losing his claim against Officer Simon, and recovering only $2,000, his win against Officer Fico was "a smashing success." Plaintiff reasons that the jury awarded "essentially 2000 times" the amount he requested at trial. (*Id.* at

1, 26). Actually, Plaintiff did not request a specific amount at trial, casting doubt on his claim that the jury awarded him 2000 times that amount. (Doc. 144-1, Ex. A, at 27). Regardless, a $2,000 recovery hardly qualifies as a "smashing success" meriting an upward adjustment. Addressing civil rights violations is undoubtedly important, and Section 1988 seeks to encourage qualified counsel to help redress these wrongs by shifting fees onto the defendant. *See Fox v. Vice*, 131 S. Ct. 2205, 2213 (2011) ("When a plaintiff succeeds in remedying a civil rights violation, . . . he serves as a private attorney general [and] therefore should ordinarily recover an attorney's fee from the defendant – the party whose misconduct created the need for legal action.") (internal quotations omitted). That said, "an attorney who undertakes a Section 1983 case may [not] spend time on the case, and ask the losing party to pay for it, without giving any consideration to its economic value." *Sughayyer*, 2012 WL 2359065, at *14 (citing *Ragland*, Slip op., at 36-37).

Here, the difference between the amount of fees requested and the actual damages awarded "raises a 'red flag' and warrants 'increased reflection' in determining whether the lodestar should be reduced." *Thompson*, 2011 WL 2837589, at *8 (quoting *Anderson v. AB Painting and Sandblasting Inc.*, 578 F.3d 542, 546 (7th Cir. 2009)). *See also Moriarty v. Svec*, 233 F.3d 955, 968 (7th Cir. 2000) (a court's "fee order should evidence increased reflection before awarding attorney's fees that are large multiples of the damages recovered."). Plaintiff admits that his case involved "a potentially small reward" due to his "low damages," and he in fact recovered just $2,000 ($1,000 in compensatory damages and $1,000 in punitive damages). (Doc. 123, at 23). Yet his attorneys are requesting more than 213 times that amount in fees – $426,379.69. Even

with this Court's adjustments, Plaintiff's lodestar is still some 108 times the verdict amount. Such disparity "strongly suggests that [P]laintiff vastly over litigated the case." *See Ragland*, Slip Op., at 21.

Plaintiff alleged six claims against three defendants, lost three claims on a motion to dismiss, took two claims to trial, and prevailed on one of the two. The issues presented were neither novel nor particularly complicated, notwithstanding Plaintiff's repeated attempts to characterize them as such. Nearly every case requires counsel to address inconsistent testimony and "bad facts," so these elements are not evidence of a "uniquely difficult" lawsuit. (Doc. 123, at 25). Indeed, the trial lasted only 3 1/2 days. Also misleading is Plaintiff's claim that his award "primarily consists of punitive damages." (Doc. 123, at 24 (citing *Edwards*, 2009 WL 742871, at *2)). In *Edwards*, the jury awarded the plaintiff $4,500 in compensatory damages and $25,000 in punitive damages; here the jury awarded just $1,000 each in compensatory and punitive damages.

Plaintiff argues that despite achieving only partial success on his two claims, his lawsuit served a particularly important public interest by "str[iking] a blow for the long-standing principle that constitutional rights apply equally to every American." (Doc. 123, at 27). (*See also* Doc. 149, at 13-14) (arguing that Plaintiff "took a high risk, and accomplished a great deed for the community."). As Defendants note, however, since nearly all prevailing plaintiffs in Section 1983 cases expose police malfeasance, "a more nuanced approach to the public interest is appropriate in a lodestar calculation." *Ragland v. Ortiz*, No. 08 C 6157, 2012 WL 4060310, at *7 (N.D. Ill. Sept. 14, 2012). "For the public interest factor to weigh in plaintiff's favor, we look to whether there was

24

some larger impact achieved by the verdict, such as exposing some deeper institutional problem within the department transcending the individual case . . ." *Id.* Here, as in *Ragland*, "the incident was isolated to one particular situation, on one specific date with one specific group of officers."[11] *Id.* The minimal impact on the public interest thus warrants a reduction in the lodestar. *Id.*

Considering all relevant factors, the Court finds that the lodestar must be reduced. Defendants' suggestion of a 75% reduction is excessive, as Plaintiff "certainly vindicated his Constitutional rights" in this case.[12] *Thompson*, 2011 WL 2837589, at *8. In the Court's view, a 50% reduction is appropriate, giving Plaintiff a total of $108,350.87 in fees.

### 3. Expenses

In addition to his attorneys' fees, Plaintiff also requests that the Court award him $1,824.99 in expenses pursuant to § 1988. (Doc. 123, at 30). According to Seventh Circuit case law,

> expenses of litigation that are distinct from either statutory costs or the costs of the lawyer's time reflected in hourly billing rates--expenses for such things as postage, long distance phone calls, xeroxing, travel,

---

[11] Plaintiff suggests that Officer Fico had a number of prior complaints against him and this influenced the decision to press ahead despite the problems with the case. (Doc. 123, at 2). However, Plaintiff did not file any motions in limine seeking to admit such complaints or cross examine Officer Fico about them.

[12] Defendants argue in part that a large reduction is appropriate given Plaintiff's counsel's practice of billing in quarter-hour increments. (Doc. 144, at 12). "Quarter-hour billing is not per se unreasonable … but may be unreasonable under the facts and circumstances of a given case." *LaSalvia v. City of Evanston*, No. 10 C 3076, 2012 WL 2502703, at *3 (N.D. Ill. June 28, 2012) (citations omitted). In *LaSalvia*, for example, the court determined that the quarter-hour billing resulted in an inflated lodestar amount because one attorney's billing records "contained 163 separate entries, 91 of which are for .25 hours, often on account of phone calls or e-mails." *Id.* As a result, the court reduced the attorney's time by 5%. In this case, Defendants have not provided sufficient analysis of the billing entries and their financial impact to allow the Court to determine whether such billing caused an inflated lodestar. In any event, the Court already addressed problems with certain of these quarter-hour billing records by reducing the requested number of hours (e.g., the hours spent filing motions in limine).

paralegals and expert witnesses--are part of the reasonable attorney's fee allowed by the Civil Rights Attorney Fees Awards Act.

*Downes v. Volkswagen of Am., Inc.*, 41 F.3d 1132, 1144 (7th Cir. 1994) (internal quotations omitted).  Defendants do not object to any of these expenses and they are allowed with one exception:  Plaintiff cannot recover the $672 his attorneys paid investigators Jerome White and Robbie Hodges to "find" their client.  (Doc. 123-19; Doc. 123-20).  Since Plaintiff filed this lawsuit, it was his burden to be available to pursue his case.  Plaintiff is thus awarded $1,152.99 in expenses.

### 4.    Prejudgment Interest

Plaintiff has asked the Court to award him prejudgment interest on his attorneys' fees, covering the period from the date of judgment (June 15, 2012) to the date of actual payment.  (Doc. 147 ¶ 10).  "In cases involving violations of federal law, prejudgment interest 'should be *presumptively available*' because '[w]ithout it, compensation is incomplete and the defendant has an incentive to delay.'"  *Board of Educ. of City of Chicago v. Walker*, 800 F. Supp. 2d 917, 927 (N.D. Ill. 2011) (quoting *United States v. Board of Educ. of Consol. High Sch. Dist. 230, Palos Hills, Ill.*, 983 F.2d 790, 799 (7th Cir. 1993)) (emphasis in original).  Prejudgment interest is calculated using the prime rate for the appropriate period, and it "typically accrues from the date of the loss or the date on which the claim accrued."  *Id.*  "The granting of prejudgment interest is within the sound discretion of the district court."  *Blackwell*, 2012 WL 469962, at *12 (quoting *C.W. v. Board of Educ. of City of Chicago, Dist. 299*, No. 11 C 2349, 2012 WL 355360, at *11 (N.D. Ill. Feb. 1, 2012)).

Defendants do not object to paying prejudgment interest in this case, so the Court will grant Plaintiff's motion in that regard.  The amount will be calculated using the

prevailing prime rate of 3.25%. *See Swanigan v. Trotter*, No. 07 C 4749, 2012 WL 4060308, at *5 (N.D. Ill. Sept. 14, 2012) (citing *First Nat'l Bank of Chicago v. Standard Bank & Trust*, 172 F.3d 472, 480 (7th Cir. 1999)). As for the accrual date, however, courts in this district have held that "it is reasonable for the [City] to have time to review plaintiffs' fee petitions, like a client would have, without being charged interest." *Blackwell*, 2012 WL 469962, at *12 (internal quotations omitted). Consistent with these rulings, the interest will accrue not from the date of judgment, but from "30 days after [P]laintiff submitted his fee information to the defense as required by Local Rule 54.3(d)(1)-(2)." *Ragland*, Slip Op., at 40. *See also Judah M. v. Board of Educ. of City of Chicago, Dist. 299*, 798 F. Supp. 2d 942, 953-54 (N.D. Ill. 2011) (holding that prejudgment interest should accrue 30 days after fee petition was filed). Plaintiff submitted his Local Rule 54.3(d) information to Defendants on June 20, 2012, so interest will accrue from July 20, 2012.

### 5.    Summary

Plaintiff is awarded $108,350.87 in attorneys' fees and $1,152.99 in expenses, for a total of $109,503.86. Plaintiff is also awarded prejudgment interest at a rate of 3.25% from July 20, 2012 to the date of payment.

## B.    Costs

The Court finally turns to the parties' bills of costs. Rule 54(d) creates a "strong presumption that costs will be awarded to the prevailing party," and that presumption is "difficult to overcome." *U.S. Neurosurgical, Inc. v. City of Chicago*, 572 F.3d 325, 333 (7th Cir. 2009); *Weeks v. Samsung Heavy Indus. Co.*, 126 F.3d 926, 945 (7th Cir. 1997); *Gilbert-Mitchell v. Lappin*, No. 06-CV-0741-MJR, 2010 WL 1838283, at *2 (S.D.

Ill. May 6, 2010). Under 28 U.S.C. § 1920, recoverable costs include (1) fees of the clerk and marshal, (2) fees for transcripts, (3) fees for printing and witnesses, (4) fees for copies necessarily obtained for use in the case, (5) docket fees, and (6) compensation of court appointed experts and interpreters. *Republic Tobacco Co. v. North Atlantic Trading Co.*, 481 F.3d 442, 447 (7th Cir. 2007). The losing party "bears the burden of an affirmative showing that taxed costs are not appropriate." *Davis v. Budz*, No. 99 C 3009, 2011 WL 1303435, at *1 (N.D. Ill. Mar. 31, 2011) (quoting *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 864 (7th Cir. 2005)).

### 1. Plaintiff's Costs

Plaintiff seeks a total of $4,696.84 in costs, including: (1) $350 for fees of the Clerk; (2) $75 for service of summons and subpoena; (3) $3,365.50 for court reporter and transcript fees; (4) $768.70 for printing fees; (5) $90 for witness fees; and (6) $47.64 for copying expenses. (Doc. 113). Defendants do not object to the amounts requested in the first, second or fifth categories of expenses, so Plaintiff may recover them in full. The Court addresses in turn Defendants' objections to the remaining three categories of expenses.

### a. Fees for Witnesses

Defendants first argue that Plaintiff cannot recover a $45 witness fee for Detective DeSalvo because the Detective was never served with the subpoena and defense counsel returned the associated check to Plaintiff's attorneys. (Doc. 125, at 3). Plaintiff concedes this point, (Doc. 129, at 2 n.1), and his request for witness fees must therefore be reduced accordingly. Plaintiff is awarded a total of $45 for witness fees in this case.

### b. Fees for Transcripts

Defendants next claim that Plaintiff's transcript and court reporting fees must be "significantly reduced." (Doc. 125, at 3). "Section 1920(2) allows recovery of fees for transcripts necessarily obtained for use in the case." *Berry v. Chicago Transit Auth.*, No. 06 C 3640, 2011 WL 947073, at *2 (N.D. Ill. Mar. 15, 2011). Local Rule 54.1 further elaborates that the costs of such transcripts "shall not exceed the regular copy rate as established by the Judicial Conference of the United States and in effect at the time the transcript or deposition was filed unless some other rate was previously provided for by order of court." L.R. 54.1(b). For ordinary transcripts, the rate is $3.65 per page for an original transcript and $0.90 for the first copy to each party. *See* Maximum Transcript Rates, http://www.ilnd.uscourts.gov/clerks_office/CrtReporter/trnscrpt.htm (last viewed on February 15, 2013).

Plaintiff seeks to recover: (1) $145.35 for Defendant Simon's deposition (Doc. 113-10); (2) $206.50 for Defendant Fico's deposition (Doc. 113-11); (3) $458.50 for the deposition of Maria Thomas (Doc. 113-13); (4) $360 for his own deposition (the "Montanez deposition") (Doc. 113-15); (5) $227.40 for the deposition of John Keen, M.D. (Doc. 113-16); (6) $360.60 for the deposition of Robert Schwaner, M.D. (Doc. 113-19); (7) $259.15 for the deposition of Efrain Nunez (Doc. 113-20); (8) $390 in court reporter appearance fees for the Simon, Fico and Nunez depositions (Doc. 113-7; Doc. 113-8); (9) $42 for the transcript of a March 27, 2009 hearing in Plaintiff's criminal case (Doc. 113-21); (10) $308 for the deposition of Christina Alicea (Doc. 113-23); (11) $407.50 for the depositions of Celia and Norma Ruiz (Doc. 113-23); (12) $48.10 for the transcript of Plaintiff's guilty plea (Doc. 113-1); and (13) $152.40 for a transcript of the

pretrial conference hearing before this Court (Doc. 113-1). Defendants raise several objections.

First, Defendants argue that Plaintiff may only recover $0.90 per page for the transcripts of the Simon, Fico, Thomas, Montanez, Keen and Schwaner depositions, as well as for the March 27, 2009 criminal hearing. (Doc. 125, at 3-4). It appears from the invoices that Plaintiff obtained copies, and not originals of the transcripts for the Fico, Thomas, Montanez and Schwaner depositions. (Doc. 113-15; Doc. 115-2, at 7; Doc. 113-11 through 14; Doc. 115-2, at 11; Doc. 115-2, at 15). Plaintiff thus may only recover the statutory $0.90 per page for each of those depositions. Plaintiff obtained an original of Dr. Keen's deposition, so he is entitled to $3.65 per page for that transcript (not $3.85 as requested). (Doc. 113-16). It is unclear which party ordered the original transcript of Defendant Simon's deposition, as both paid $2.55 per page. (Doc. 113-10; Doc. 115-2, at 14). The Court will thus award Plaintiff $2.55 per page as requested. As for the March 27, 2009 criminal hearing, the Court finds that Plaintiff may recover $3.65 per page (not $4.20 as requested) for an original of that transcript.

Defendants next object that Plaintiff has not provided any invoices for the transcripts relating to the depositions of Christina Alicea and Norma and Celia Ruiz. Nor are there invoices for the guilty plea transcript or the pretrial conference hearing. (Doc. 125, at 4). In response, Plaintiff produced a MasterCard statement showing that Plaintiff's counsel paid Urlaub Bowen and Associates, Inc. $511.90 on May 4, 2012. (Doc. 129-1, at 3). Plaintiff also produced copies of a $48 check paid to court reporter Mary Ellen Kusibas (Doc. 129-2), and a $152.40 check paid to court reporter Kathleen M. Fennell. (Doc. 129-3).

The Court cannot determine from the MasterCard statements or the cancelled checks how many pages each transcript was or how much Plaintiff paid per page. Document 113-25 reflects that the Alicea deposition was 66 pages, but there is no evidence as to whether Plaintiff obtained an original or a copy for that transcript. As a result, he will be awarded $0.90 per page. Based on invoices submitted by Defendants, it appears that the Norma Ruiz deposition was 83 pages, and the Celia Ruiz deposition was 72 pages. (Doc. 115-2, at 10). Defendants ordered original transcripts for both Ruiz depositions, so Plaintiff may recover $0.90 per page for his copies. Given the complete lack of documentation as to the length and cost per page of the guilty plea hearing and the final pretrial conference hearing, those expenses are disallowed.

In sum, Plaintiff's request for deposition transcript fees is allowed in the amount of $1,790.80 as follows[13]: (1) $145.35 for the Simon deposition (57 pages x $2.55); (2) $74.50 for the Fico deposition (80 pages x $0.90 plus $2.50 for exhibits); (3) $181.20 for the Thomas deposition (118 pages x $0.90 plus $75 for an e-transcript); (4) $139.20 for the Montanez deposition (138 pages x $0.90 plus $15 for a word index); (5) $216.20 for the Keen deposition (56 pages x $3.65 plus $9 for a word index and $2.80 for exhibits); (6) $149.80 for the Schwaner deposition (124 pages x $0.90 plus $19 for a word index and $19.20 for exhibits); (7) $259.15 for the Nunez deposition (73 pages x $3.55, the court reporter's stated rate); (8) $390 in court reporter appearance fees ($260 for the Simon and Fico depositions plus $130 for the Nunez deposition); (9) $36.50 for the March 27, 2009 criminal hearing transcript (10 pages x $3.65); (10) $59.40 for the

---

[13] The Court notes that Defendants do not challenge the costs relating to exhibits, word indexes, or e-transcripts. (Doc. 125, at 3-4).

Alicea deposition (66 pages x $0.90); and (11) $139.50 for the depositions of Celia and Norma Ruiz (155 pages x $0.90).

### c.    Fees for Printing

Defendants finally challenge certain of Plaintiff's $768.70 in printing expenses. (Doc. 125, at 4-5).   It appears that in addition to seeking reimbursement for the deposition transcripts of Christina Alicea, Norma Ruiz and Celia Ruiz, Plaintiff also asks the Court to award him an additional $22.10 for copies of those transcripts (a total of 221 pages at $0.10 per page).   (Doc. 113-25, at 6).   Plaintiff claims that Ms. Preyar needed the copies to prepare for trial, but none of these individuals was identified as a potential witness, and Plaintiff has not explained why Ms. Preyar was unable to review the transcripts provided by the court reporter.   In the Court's view, Plaintiff's counsel copied these transcripts solely for her own convenience, and Plaintiff may not recover those expenses here. *Hakim v. Accenture U.S. Pension Plan*, __ F. Supp. 2d __, 2012 WL 4738980, at *8 (N.D. Ill. Oct. 3, 2012) ("[C]harges for copies made for attorney convenience are not [recoverable].").

Defendants also object to $3.10 Plaintiff spent copying requests to admit on November 4 and 5, 2011 (a total of 31 pages at $0.10 per page).   (Doc. 113-25, at 6). Defendants stress that the Court ultimately struck these requests, and argue that they were thus unnecessary in the case.   The Court agrees that Plaintiff should have known better than to file these untimely requests to admit without leave of court, and the Court has already struck the time his attorneys spent drafting them.   The associated copy charges are similarly disallowed.

Based on the foregoing analysis, Plaintiff may recover $743.50 in printing costs.

#### d. Summary

To summarize, Plaintiff is awarded $3,051.94 in costs as follows: (1) $350 for fees of the Clerk; (2) $75 for service of summons and subpoena; (3) $1,790.80 for court reporter and transcript fees; (4) $743.50 for printing fees; (5) $45 for witness fees; and (6) $47.64 for copying expenses.

### 2. Defendants' Costs

In their bill of costs, Defendants seek a total of $19,936.34 on behalf of Defendant Simon, including: (1) $995.64 for service of summons and subpoena; (2) $4,996 for court reporter and transcript fees; (3) $90 for witness fees; and (4) $472.50 for copying expenses. (Doc. 115). Plaintiff argues that Simon cannot recover fees in this case because he is not a "prevailing party" for purposes of Rule 54(d). (Doc. 126 ¶ 4). A party prevails within the meaning of Rule 54(d) "when a final judgment awards it substantial relief." *Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 573 F.3d 523, 525 (7th Cir. 2009). Here, Plaintiff charged Defendant Simon with a single count of failure to intervene. There is no question that the jury expressly found in Simon's favor and awarded Plaintiff no money on that claim. In the Court's view, this constitutes "substantial relief" under Rule 54.

Nevertheless, Defendants are not entitled to fees because they cannot make any meaningful distinction between the costs incurred on behalf of Simon and the costs incurred on behalf of Defendant Fico, who did not prevail in this case. Defendants argue in conclusory fashion that their "legal obligations and liabilities were by and large distinct, as were the factual allegations against them, as were the legal elements that had to be proven as to each of them." (Doc. 140-1, at 2-3). In the Court's view,

however, there was significant overlap among all aspects of both claims. Plaintiff developed and offered evidence to prove that Fico used excessive force and was successful in doing so. That same evidence was necessary to prove that Simon failed to intervene. Thus, in defending Fico, Defendants were simultaneously defending Simon. (*See, e.g.*, Jury Instructions, Doc. 108, at 26). In other words, both claims were inextricably linked and required that the jury hear evidence sufficient to understand the circumstances surrounding Plaintiff's arrest and the nature of his interactions with Fico. Notably, Defendants have not made any attempt to identify specific costs attributable solely to Simon's defense, nor have they cited any case where a court awarded costs to a defendant in circumstances similar to those presented here. "[T]he power to award costs is a matter within the sound discretion of the district court." *Rivera v. City of Chicago*, 469 F.3d 631, 634 (7th Cir. 2006). Defendants' request for costs is denied in its entirety.

## CONCLUSION

For the reasons stated above, Plaintiff's Motion for Attorneys' Fees and Expenses (Doc. 123) is granted in the amount of $109,503.86. Plaintiff's Motion for an Order Granting Prejudgment Interest on Attorneys' Fees (Doc. 147) is also granted at a rate of 3.25% from July 20, 2012 to the date of payment. Finally, Plaintiff is awarded $3,051.94 in costs. Defendants' corresponding request for costs (Doc. 115) is denied.

ENTER:

Dated: March 18, 2013

_____
SHEILA FINNEGAN
United States Magistrate Judge